This is our next case of the morning, Nicole Spears v. Association of Illinois Electric Cooperatives. For the appellant, Mr. Elwood, for the appellee, is it Regalee? Is that the right pronunciation? Well, good. Thank you. You may proceed. Thank you and good morning. Brad Elwood for the Association of Illinois Electric Cooperatives. Before I begin, there's a couple of things I'd like to address very briefly. First of all, as the Court is aware, this is an interlocutory appeal under Supreme Court Rule 308. Our second issue, we would like to rest on the brief on that issue. We understand the parameters of a certified question. We understand the issues of the court's jurisdiction. We included that issue. The second issue being the willful and warranted? Yes, sir. And so we'd like to focus our argument today, if we could, largely on the issue of the release. I think the case rises and falls on that point. Now, the other thing I'd like to do is that we're fully aware that the Court issued an order to the parties to ask us to be prepared to address 12 cases. Given the fact that some of the cases seem to affect both sides, what I'd like to do is just take a couple of minutes and orient you towards where we're coming from and then address some of the issues that are raised in those cases. So with that being said, again, this is a case on a 308 certification. This is the situation where the plaintiff was climbing a utility pole during a course that she was taking at Lincoln Line College, had some difficulties with the pole, and fell and was injured. The question in the case is whether the release that was executed by her as a part of her climbing course is a valid release. The Circuit Court struck the release as part of a motion to strike and denied the motion for summary judgment, which had been based on that release. And the Circuit Court's reasoning was simply this. The Court finds the bargaining positions of the parties militated against enforcement of the exculpatory release signed by the plaintiff and therefore support the motion to strike. What I'd like to do for a moment is just give the Court our perspective on this case. We don't believe that this is an unequal bargaining position case for the simple reason that the course and the additional training, while beneficial, I think the record clearly shows that it was beneficial. How could we decide if it's an unequal bargaining position case given where we're here on pleadings? How could we decide that? Is it just automatic that it's not? Is it automatic that it is? Or is that a factual question? I don't think it's a fact question. I think the Court can address that based on the way the trial court looked at this from the standpoint of obviously we filed our motion for summary judgment based on the language of the release. And the other side moved and said that's not valid as a matter of law because there was unequal bargaining power. I think the Court can address that. And I think when we look at the simple notion that there's no law requiring that an individual who wants to be a lineman undergo any particular type of pre-employment, pre-work training, there's no... Let me ask you this, counsel. The certified question uses the term undisputed facts. What are the undisputed facts this Court is supposed to consider in answering this particular question? Just so I'm sure, you're talking specifically about the uneven bargaining position? I'm talking about the question. Because that's the undisputed facts. I want to know what the undisputed facts are that I'm supposed to consider to answer this particular question. And then I'm going to ask opposing counsel, if opposing counsel disputes what the undisputed facts are, where in the heck does that leave this Court? Let's start off with the undisputed facts, though. The undisputed facts of the case, if we want to look at it in a holistic sense, is the plaintiff enrolled in courses at Lincoln Land College to pursue a degree, I'll just call it, to become a lineman. She signed a release as a part of her first pole climbing class that was a waiver of any liability arising out of injuries associated with the activities in that course. Six months later, roughly, she was injured when she fell off the pole. I think it's undisputed that she was familiar with the risks associated with being a lineman. It's undisputed she had a pole in her own backyard. I'm pretty sure from reading the briefs that opposing counsel is going to say that is in dispute, whether she was familiar with it was a dangerous situation. But go ahead. I think the record establishes that she voluntarily signed the release. She said, I was under no duress. It also is undisputed from the record that she said she believed that there were some economic reasons why she felt it was appropriate to sign the release. Namely, I believe the $1,600 that she spent to buy the equipment associated with the pole climbing, which I assume would be the boat, the belt, the tarp, those types of things, the harnesses. The class expenditures to take the courses, it's undisputed that she took, I think, nine classes that were taught by the association and an additional class later that was taught by the university. I think those facts will allow us to ask the question, did this release, and we know how she felt. I don't think there's any dispute on the method on how she felt. I think based on those facts, we can say as a matter of law, on those facts, is this release proper? Was it valid? And did it cover these activities? And we have to address the question of whether there's an equal bargaining position. So I think those are the facts that the court has to work with and send the case back. We think that the court can decide this. I think the question, really, that we're asking is, was it proper to strike this on these grounds? Now, I was thinking about that when I was coming over. If the court finds that this unequal bargaining position didn't exist, then I think we have to send it back for the trial court to make a determination as to whether or not the release, then, therefore, bars. Because I don't believe that a fair reading of the trial court's decision is that it considered that it threw the release out. So it has to be able to consider the release. So I think the court can, as a matter of law, decide whether or not there was an equal bargaining position. So I hope I addressed that to your satisfaction. Now, as we look at these issues, the relative bargaining position we think is controlled, and the White case is distinguishable from our case. Because there was no compulsion for this lady to take this class, we're fully aware that she says there were some financial reasons. But we'll talk about those in a second. But as far as when we look at White, the pre-employment relationship, we don't have that pre-employment relationship here, as we did in White, where we're looking at the association as her employer. We don't have those facts. What we have here is someone who's trained to better themselves, to be able to make themselves more marketable. And as I said earlier, there's no requirement in the law that says you have to have a certain degree to be a lineman. Many companies, I think the testimony from Mr. Larkin was many companies prefer to do their training in-house. So it's not mandatory that she undergo this training. But the record also says it will help her, and we acknowledge that. So we don't think there's a relative bargaining position situation here. We don't think the White case supports the position. She had other alternatives. Now, when we look at the financial aspect, we say, well, they're arguing she spent $1,600 and she undertook all these courses. And I think the thing that we have to keep in mind with some of that is since there was no requirement that she undergo training before she is hired, since there's no requirement that she be degreed or certified, et cetera, if she would have looked at her instructor and said, I'm not signing that release, she could have just taken her equipment and gone off and applied as a lineman. So that's not real. It's kind of a red herring prejudice argument. There's really not a prejudice there. So that throws that out of the picture. And I think if we then look at a couple of the cases that the court directed our attention to, the Diding case was an example where the court said, we can't really consider, we're not going to consider the fact that by the time that the plaintiff was presented with this lease that they undertook to take some courses, we're not going to consider that as an economic duress. If we look at the, I think if I'm pronouncing it right, the ISIL case, the medical students, the tuition, they said the mere expectation of a course of conduct does not create a contractual obligation, even where disappointed expectations lead to heavy financial loss. So I don't think we can focus just on the fact that she had some expenditures for the course. And I guess the other thing I'd point out, I think most of us have had kids that go through college and they've dropped a course. This release was presented to her very shortly after she began. I mean, most of us understand that when you start a class, if you drop a class, you get a refund. So those things could also come into play to mitigate this notion that she had all of these financial burdens that were impressed upon her by herself. Most of us know that. I don't know that in relation to these vocational courses like this. I don't know what the policy is. Well, the policy is not in the record. Absolutely, the policy is not in the record. I mean, if she said, I'm totally unentangled and I'll move anywhere in the world, then the testimony about, well, many companies or some companies like to train from within. What if the testimony is, I live in the family home. I really can't afford to move. I'm going to Lincoln Land because of where I live, and my only expectation of employment is with these one or two utility companies. And both of them, 99% of their hirings are people that have already passed this course. That might change. Yeah, it might change. But we don't have that. What we were missing here is that last portion. The last portion of your hypothetical was that 99% of the local electrical companies require a degree. We don't have that in this case. We've got her testifying to many of the things that you said, but we've also got Mr. Larkin testifying to the fact that you don't need a degree. You don't need free training, while some companies prefer it. That whole area is murky out there, and I don't think that we can base a finding on that. If it's murky, what are we doing deciding it on this record? Well, I would say if it's murky, the trial court never should have struck that on that ground. Well, that might be right. I would think that would be the appropriate answer to yes. Mr. Edwards, if I could interject here, and I'm Judge Harris, by the way, just so that you have a name here. My concerns, or I guess my questions for you, are going to be more procedural in nature. The certified question asks us to consider whether or not certain facts, quote, militate against the enforcement of this exculpatory release. And the 308A certified question, to be considered by the court, should be something that will materially advance the litigation in the court below. As my understanding, there was a defense summary judgment motion that was denied, and then also the defendant's affirmative defense relative to the exculpatory release was stricken. So we have two different things that were in play down below. The certified question, the answer to this, what effect will that have, either in the negative or the affirmative, on either of those two things? My guess is, with the summary judgment motion, I mean, you're really not requesting that this act is a wolf in sheep's clothing here, where this is basically a reconsideration of the summary judgment issue. But what effect would an answer to this question have on the summary judgment issue, or on the issue relative to whether or not the affirmative defense may be raised? I think that this court would agree with us that the trial court erred in striking that, based on the unequal bargaining positions. I think, one, that would reverse the ruling on the motion to strike. Two, I think that would place that release before the trial court to be considered as a part and parcel of the summary judgment. How that affects the entire case, I think it does materially advance the case, because right now the parties are in a position where we are looking at each other and saying, I think this issue should be one way and I think it should be another, and no one is talking and no one is meeting and we're not really going anywhere, and to have some resolution on this point at this point in time in the case, when we can come back into it and tell the trial court, this was a wrong ruling, this is a valid release. All right. That allows us to... The wording of the question, I have some concern about that. The phrasing, militating against, it doesn't mean whether or not, based on a certain set of undisputed facts, and I share Judge Turner's concerns about whether or not there are undisputed facts that we can utilize here, but it's more of the effect of this. Militating against simply means whether or not it's a factor weighing in favor against enforcing this exculpatory release. It's not whether it's avoiding of the release or giving full effect to the release, it's just whether or not it's a factor for the trial court to consider. Does an answer to that type of question really advance things? I think it does, and if I could back up for a second. I understand what you're saying about the militating. I know this isn't the appellate attorney answer. I didn't draft this, so I don't have the insight to understand where the parties were thinking when they used that, but my understanding from when I looked at this and said, where did that language come from, was that they were parroting the language of the trial court's order, and they were trying to be precise in doing that. I think that's where the issue is. How could you argue that if there were an uneven bargaining position, that would militate against enforcing the release? That's part of what the case is about. I think when we look at that whole sentence and we say, militating against, what does that really mean in the context of this, but we look at the fact that they granted the motion to strike the affidavit, which means to me what I think that order says is that affirmative defense based on that release is gone. It's essentially, in fact, invalidating the release and saying it's not an effective release. I think that's the result. Yes, sir. Your position is we should allow the trial court, or say the trial court was wrong in striking this language so that it can't be used as an affirmative defense, but plaintiff nevertheless can continue to argue it. As further facts develop, would that be accurate? The way I read this, and I may be wrong, but my reading of this is that the trial court said the release is invalid. Yes. Based on the fact that they're running for release. What I'm saying is say we disagree with the trial court. Your position, however, is that plaintiff may still be able to argue that it's invalid based upon additional facts that might be developed through discovery. I don't think so. I think that those – I don't want to say this. It sounds rude to say it that way. Well, isn't it a fact question whether a release is valid unless it falls within the category of employer, employee, or common carrier for recognized exceptions? If the release – okay, let me see if I can put this in how I'm looking at this. If we say that the unequal bargaining position falls away, we have a valid release because they filed a motion attacking this count, this affirmative defense based on the release, and attacking the substance of the release. So this is the only reason that the trial court utilized to say that we're going to strike that based on an invalid release. So the way I read that is to say the release is not valid for this reason and this reason only. So if this court says I don't agree, then that release becomes valid, and by procedure in the case, we go back to the trial court. We may have a summary judgment, but I walk back and say, now your honor, this release is valid. And I win count one in the summary judgment. And now we have a case that's just a Wolfham-Wanton case, which is a wholly different burden from my opponent, and it changes the complexion of the case. And I think that hope addresses some of your procedural concerns, but at the same time telling you how I view this. I think this order, it's written in kind of a strange way, but I think that's the analysis that needs to be applied. The court found it was invalid for this one reason. If this court agrees that that's an improper reason, the release is valid, we go back, and unfortunately it would be a perfunctory step at that point for the trial court to say summary judgment. That's why we ask for the court to reverse. We can't have maybe jumped ahead of the court. Would it have been a cleaner mechanism just to ask that the order striking the affirmative defense be made final and appealable and appeal that? Because this certified question really leaves you in murky territory. That would have been an interesting way to proceed. It could have been done. Yeah, definitely. Were there any questions specifically that the court had from the 12 cases or the 12 authorities that it cited? I was kind of baffled on how to present that to you because, like I said, I think some help us, some help my opponent. But were there specific things that troubled you that you wanted to ask us about? I think there was the potential that we would be considering some cases as opposed to wanting you to hone in specifically on one or more of them, but rather that those were within our purview. Certainly. And it has been known that courts sometimes make decisions and cite cases that are unfamiliar to the parties. Certainly. Certainly more fair if you know about it ahead of time. If I may quickly comment on a couple of those, and then I'll sit down and let my opponent have his opportunity. The cases that seemed to trouble us from our perspective were the cases that developed after the, I think it's pronounced Tumple case, which focused on this notion of a public service. And some of the things that we did to try to help, try to respond to this, we jeopardized those cases. We took a look at whether Illinois had followed any type of similar approach and couldn't find any cases that had. As a matter of fact, the thing I thought was interesting on Tumple is that when you ran the shepherds of it, many of the cases, there was a lot of red lights. And when you look at those cases, there seemed to be a reluctance to apply that wholly. When I look at Tumple and I look at some of the authority of the California case, which was Tumple, they relied on a statute that talked about how we view releases as far as public policy. And the releases were essentially against public policy. I don't think we have that here. When we look at White, we don't think it applies factually. I'm out of time. If I could finish my sentence. You may. Thank you. If we could look at White's recitation of the law, the standards that it talks about don't include any... Let me rephrase it. White says that the general rule is that exculpatory agreements can be enforced unless it falls within two exceptions, against public policy or something in the social relationship of the parties mitigating against upholding. I think that's what the trial court rested itself on here. But I don't see anything that would allow us to run down the path that Tumple seems to point. I'm out of time. I thank you for your opportunity. Thank you. May it please the Court. My name is Ryan Reguli. I represent the plaintiff appellee, Nicole Spears. First, I would like to just address the fact that they will not be addressing the Wolfman-Watt account of the Wolfman-Watt argument, arguing that it was inappropriate for the trial court to dismiss that on summary judgment. I believe that the trial court was correct in dismissing their motion for summary judgment as to the Wolfman-Watt account of the plaintiff's complaint. I believe that there are serious issues of fact that need to be determined with regard to that Wolfman-Watt account, and that it would have been inappropriate for the trial court to grant their motion for summary judgment on that account. Keep your voice up a little bit. Sorry, Your Honor. What I would really like to address today, though, is the enforceability of the exculpatory release it issued here. I think that there's two separate reasons why this Court could find that exculpatory release is not valid. I think one is the Court can look at the bargaining positions of the parties here and find that this was not a free and voluntary choice on the part of Nicole Spears. I think this Court could find that she was presented with a take-it-or-leave-it contract of adhesion that said, guess what? If you want to continue taking these courses, these courses that you've already taken out loans for, these courses that you've already paid tuition for, these courses that you've purchased $1,100 in tools for at our request, the fact that you've already taken and completed one course in this curriculum, now you're going to come to the second course in the curriculum, the practical portion, and we're going to tell you now you've got to sign a release. I think that the Court can find that in this position, she was under an economic compulsion to sign this release, and I think that there was an unfair bargaining position. There was no bargaining table here. This was a take-it-or-leave-it release. She had no option to negotiate the terms of the release, no option to pay an additional fee so that she could be protected from negligence on the part of her instructors. She had no choice. I think that there are undisputed facts. What are they? Do you agree with what counsel said? He gave me a list. Well, I disagree with some of them. I think you were correct in the fact that I do disagree with the fact that she was aware of how dangerous it was. If we don't agree on the undisputed facts, how can this Court entertain this certified question? Well, I think there are other undisputed facts that can serve as a basis for this, and I think the facts that Judge Schmidt heard were that you have Nicole Spears, a single mother of four who lives in Beardstown, Illinois, who had no real educational training, decided that she wanted to better her lot in life and enrolled in classes at Lincoln-Land Community College. She's become a Lion. She goes. She starts taking these courses. Like I said, she takes out loans. She pays her tuition. She buys all the tools. She buys her books. Goes to one set of the courses. First class. Completes that. Passes. Goes on to the practical portion. Gets there the first day of the practical portion, ELM 130, and they tell her, oh, by the way, if you want to keep going, if you want to complete this, you've got to sign a release. And take it or leave it. Sign this release or you're done. You've got to walk out. And I don't believe that she had a fair choice of that. I don't believe she had a reasonable option. At that point, what was she to do? Give up on her dreams of becoming a Lion? Give up on the investment? Was there a fact that she would think about? No. Absolutely not. She signed whatever they were going to put on her. She was ready to go. This was her dream. She wasn't going to think twice about it. In fact, she says as much in her deposition testimony. That's part of the undisputed facts that the court can rely on. I think that also you can look at there's other facts involved here, including, I mean, she was in an economic precarious position. She's a single mother of four. The court was aware of that. The bargaining position that she has versus AIEC, a large corporation. And I think these are undisputed facts that the court can look at in determining what is the bargaining position. Am I to understand you, counsel, that this release might be effective for some people but just not your client? No. I don't believe that. It seems to me that you're arguing if you take the opposite, we have, we'll say, a young man who was wealthy but just decided this is what he wants to do. Why do you keep referencing that she's single with four children if it's not particular to your client? I think it goes to show even more why she was under an economic compulsion. I mean, I think we're trying to determine here, did she have a reasonable option? Did she have a free choice? And I think that that goes towards it. It's one fact. Well, you use an interesting term that her decision was clouded, I think. That I think is what you said in your brief. Absolutely. What? She didn't even read it. How can she make a clouded decision? She trusted her professors. She trusted the university to give her a safe education. She didn't think they were going to put her in harm's way. She didn't think they were going to ask her to do the things that they eventually did. She felt she was going to provide a safe and quality education. And so she was willing to agree with whatever they asked her to do because she trusted them. I think that trust is what clouded her judgment. I'm more curious at this point why your client wants to have this certified question before the court. I mean, your client won at the summary judgment level. Your client got the affirmative defense stricken. I mean, why was she clamoring to get the case set for trial and get the verdict? I mean, I don't see where it helps your client. I don't know why you're wanting to have this question answered. And then secondly, how is this case any different than any other case where during the course of the trial court proceeding, rulings are made, you know, maybe some are correct, maybe some are incorrect, but you wait until a final disposition by trial or dismissal or summary judgment. Then it gets to the appellate court to determine whether or not some of those rulings were correct or incorrect. Why should the appellate court be dropping in on this case midstream? My client did not want this question to be certified. We objected to that. We strenuously objected. There was a hearing held. Judge Schmidt determined that this was an appropriate question to certify. My client did object to that at the trial court level. I think that you've asked how this continued. Did you object at the appellate court as well? I do not believe I filed any formal objection at the appellate court level. We did object to the certification at the trial court level. Judge Schmidt, over our objection, decided to certify this question. So would you argue that when we granted this motion, allowing the certification of this appeal, that we acted improvidently? If that's your feeling, that's okay to say. That wasn't a trick question. I would have preferred you not to grant this motion to certify this question. I would have preferred for the court to not entertain this review at this time. I believe that this is only related to procedures because it has put a wedge in between any potential settlement negotiations at this point. Nothing is going to be settled in this case while there's still the issue of whether or not this release is enforceable. And I think that that's something that you asked how did this materially advance. That's the previous counsel. How did this materially advance the appellate court application? I think that's definitely one way. I think that a resolution to this question will stimulate whether or not there are settlement negotiations to have this case disposed of without the uncertainty of going to trial. So from my client's perspective, I'm sure that she would like to get a resolution without the uncertainty of going to trial. What concerns me is that I think you are saying, as a matter of fact, they have an uneven bargaining position. I am. If it is a matter of fact, then why isn't it a matter of fact, since there are a number of disputed facts, why isn't it a matter of fact whether the affirmative defense ought to be an issue at trial? And if that's the case, what are we doing answering this question, and what was the trial court doing striking the affirmative defense unless he thought, as a matter of fact, no other facts could be that this was an uneven bargaining position. And I have some sympathy towards your position in terms of the student relationship. I mean, I can see that line of cases, and I understand that. But it seems to me that that's something that ought to be further developed before we jump in. Because in answering a certified question like this, we are giving a distinct advantage to one side or the other in something that appears to be disputed. As opposed to this being a matter of law, that she has an uneven bargaining position, no affirmative defensive release. We are deciding that the facts surrounding the signing of the release were such that she had no choice. That's a good argument, but is that a matter of law? The trial court heard certain facts from my argument on behalf of Mrs. Spears that were uncontested by the defendants. And he made this ruling saying, applying the law to those undisputed facts, similar to a court that would apply law to undisputed facts in a motion for summary judgment. They can take the facts that are developed from discovery through affidavit, and they can apply those in a motion for summary judgment by applying applicable law to those undisputed facts. The trial court did the very same thing. Well, isn't it disputed whether and when the defendant explained the release's significance? No. Roger Larkin, agent for the defendant, testified in deposition that he presented the release the first day of EBLM 130, acknowledged that the plaintiff, Nicole Spears, had already completed one prior course. I think it indicated that he had asked her to come to the class with approximately $1,100 in equipment, acknowledged that she had already registered, paid for these courses, bought the books. I mean, they asked her to come to the first day of class with books. This is all something that was acknowledged straight from the testimony in deposition of an agent. Well, how about whether she knew she'd be required to climb without a fall restraint device? Is that disputed, or is it just... That fact was presented to the trial court in an affidavit signed by Mrs. Spears. Nothing was raised in the arguments at the trial court level by the defendant opposing that affidavit. That affidavit was presented to the trial court unopposed, and I believe when a court considers a motion for summary judgment, they can consider the affidavits that are on file at that time. That affidavit went in unopposed. Well, how about the testimony that many companies prefer to train from within? That was opposed, I think, by the testimony that was presented by Roger Larkin himself, who indicated that many of the students that graduate from the ELM course, and in particular take the climbing courses in that associate's degree major practically, they are employed by AIEC member cooperatives. I think that it shows that she significantly enhanced her employment prospects by taking this course. It was also the words of Roger Larkin, the agent for the defendant, that stated, you know what, he thinks she probably didn't get a job because she was a woman, because she was a girl. And I think that goes to show why this education was acutely important for Nicole Spears. As a woman trying to break into a predominantly male field, I think it was important for her to have this training. It was essential. I don't think she was going, you know, opposing counsel suggested she could just pack up her tools and go apply for AIMS. I think that completely ignored the reality of the situation. I think that she could not have done that under any reasonable circumstances. She would not. The defendant, Roger Larkin, indicated the fact that she was a woman, not common in the field, simply not something that's seen. Companies aren't comfortable hiring. So that's why she needed this additional education. Has all discovery on that issue been completed? On the issue of the release? Of the release. I think that it's been fairly well fleshed out. I don't feel that I would need to do any additional discovery at this point. I wouldn't request any additional discovery as to the issue inside of my case with the defendant. Was it all presented to the trial court? Yes. Okay. There was a lengthy hearing on the motion for summary judgment in which affidavits and transcripts of depositions were presented to the trial court for reconsideration. Some of those transcripts, portions, have been provided in the record on the field. The other thing I'd like to address beyond the disparity in bargaining position is the issue of whether or not this release could be held unenforceable on a completely separate ground. And that's the fact that this is between the public. It's a release that's between the public and the public. Is that included in the certified question? It's not included in the certified question, Your Honor, but I believe that the appellate court can look for reasonings outside of those provided by the trial court in upholding the trial court's decision. And I think that there is an additional reasoning that this court could utilize to uphold this trial court's decision. And that is that this is essentially an adhesion contract presented by someone with a duty of public service to a member of the public. There's really no Illinois case law that fleshes out this or defines the contours of what actually is. So we should answer that in a certified question where from the questions asked by us from the bench suggests that we think there's some, we're not able to fully grasp the effect of answering the certified question and maybe have some doubts? I think it could provide a resolution to this issue. Yeah, if we announced it on a public policy basis, it surely would. Yeah, I think the court could. In fact, I was drawn to present this argument based on facts or the cases that this court suggested that we be prepared to present, particularly the Tunker case. I look at that, and I tried a case from California and then numerous other cases that the court cited, one from West Virginia, one from Wisconsin, one from Washington, that did apply that Tunker decision to determine whether or not this was an issue. What classifies as, or at least it would be unenforceable, because there is a duty of public service. This is a contract of duty of public service. When you look at Illinois case law, it just hasn't been fleshed out. All you get with regard to that exception, that public service exception, is the standard four things. Innkeeper, common carrier, public warehouse, public utility. Those certainly can't be the only four service providers in our society that have a duty of public service. There has to be more than just those four. And I think we need to have some sort of test to flesh out what it is. And right now, when you look at the Illinois case law, you can't find that test. I think the Tunker decision, this case presents an opportunity for the court to adopt the reasoning of the case. And I think if you applied it to these facts, this release would clearly be invalid and a violation of public policy. You know, something you said just a few moments ago, it clarified this in my mind just a little bit. You were suggesting that the trial court's decision was correct. We're here on a certified question. Really, isn't this a cart before the horse situation? The question has relevance to the court's consideration of the summary judgment motion and whether or not to grant the motion to strike the affirmative defense. Shouldn't that certified question, if that was to be posed, have come before the trial court's decision on either of those two things? Because what you're talking about is the trial court already having decided those issues. Now, afterwards, you're having the question posed. It's not getting the trial court guidance in advance of a decision on those two matters. It's after the fact. Can you comment on that? I mean, it was not my understanding that that was the purpose of the 308 Interlocutory Appeal. I mean, I would think that that would have been essentially asking the trial court for an advisory opinion. I believe that clearly some guidance on this issue would have helped the trial court, as I think additional guidance from the appellate court would help any trial court on any issue to help clarify it, especially when there's any workiness or uncertainty. But what we have here is the trial court made a decision based on the facts presented at a hearing on our motion to strike and our motion for summary judgment, and they determined that this release was unproductive. Regardless of how inartfully drafted, maybe it was, the motion statement or the question, I think that both parties went into this with the understanding that what we were asking this court, what we were hoping to find out from this court, is whether or not that release is unproductive. I think that that's the question that we ultimately were hoping to have resolved by this time. When I say hoping, it was my client's hoping that this wouldn't be here on appeal at all. In this case, this question would not have been certified, it would not have happened. What do you think militate against means? I think that Judge Harris was correct in that it's a factor to be considered weighing in favor or against. Well, does that mean it's like a presumption? I think a presumption can be rebutted. I think that this is more in the sense of does it weigh in favor or against. Well, the dictionary says it means weighs heavily. Does that sound right? Yes. But it's not dispositive. No, I agree that militate does not mean a dispositive resolution. I do believe that that is what the parties want. So why would the trial court ask that question? It's not even dispositive, no matter how we answer it. I can't speak for the trial court's reasoning. All I can say, and I just understood this offensive statement, is that I believe that the trial court, in the conversations regarding this, the trial court, defense counsel, myself, we intended this appeal, once it was determined this question was going to be certified, we intended this appeal to resolve the issue of whether or not this ruling was going to be used. Perhaps something in the wording, when we placed it before this court on the question, got lost. But that was the intent of the decision. Thank you very much. Rebounds. I have five quick points that address a couple of the court's comments. First of all, Justice Turner, when you're asking about the meaning of militate and how it fits into this, if it were only a factor weighing the validity or the consideration of this release, I think the proper resolution would be for the trial court to say this is a question of fact and to deny the motion to strike, deny the motion for summary judgment, let the case go to the jury, and for the jury to see it. But the fact that he didn't, and he used that perhaps inartful word in the context of saying, I grant the motion to strike. What he was saying is, defendant, you can't base your defense on this release. In other words, it's invalid. So I think, while I understand your reluctance to grapple onto that term, I think the intent of the way the court ruled is that it meant to invalidate the release on that ground, and it used perhaps a weak word rather than a very forceful word. I also think that the motion to strike, the fact that the court granted that motion based solely on the basis of the unequal bargaining conditions, to me that suggests the court was denying the other and finding them to be not valid. Otherwise, I believe it would have made some alternative rulings to say, even if it isn't unequal bargaining power, there's no consideration, et cetera. So I think that's something to consider. The comment about this being some type of discriminatory element, at page SR114 of the record, Mr. Larkin talks about this notion of her being a girl. She was having a conversation with one of the companies, and there was some play on words, and there was a misunderstanding between the two. I don't think that has anything to do with this case. I think that's just a comment. I don't think that that has anything to do with the ruling in this case, and really shouldn't be considered. The last two things are this. When we talk about the expenditure of the timing and the gear of the course, if we have a case where we do here, where there's no requirement by law that says that future linemen, you have to have a degree before you become a lineman, all of the stuff that this lady has done is training. The coursework, it may not have the extra enforcement of having a degree behind it, but it's all considered training. So to say that this is all to be washed away, I think is an overstatement. The gear, the coursework, everything, if she would have said, no, I'm not doing that. I'm not signing that. Everything could have been used. It constitutes training, maybe not to the full extent, but it still constitutes training. It's not like everything was turned off at the spigot. She had no opportunity to go forward. And then the last thing. Yes, sir. No, go ahead. The last thing is simply this. I understand your concern about disputed facts, and when I look at several of the cases that we cited, Hammer, Schlesman, and the case that the court pointed out, well, Johnson, all those were summary judgment cases. And some of the issues in those cases were, what were the scope of what I am releasing? And of course, the other side said, no, I didn't know that this activity was included within the four corners of this release. But what the court did is they said, here's the release. Here's the accident. This is covered. And they didn't look at the other arguments and say, well, the guy ran out into a closed street. He was not an authorized pedestrian. They didn't look at that and say, well, the plaintiff disputes that. So we're going to say it's a question of fact and let it go to the trial on the issue of the scope of the release. They said, here's what the release said. Here's what happened. Was this anticipated in this? And they said, yes, it was. So there's no scope issue of the release. I think that's exactly what we have here. So if there is a difference as to what she supposedly knew, what she appreciated, did I know I'd be jumping between poles, or the type of activities, that really doesn't matter as long as we can look at the release and say, here's what excluded. Here's what happened. Does that fall within it? And was it reasonable? And on those reasons, I don't think we have a question of fact. Thank you. You had a question. Yeah, I do have a question. If a person is trained, your argument would be that this release they sign is valid. However, once they're trained and become employed to climb poles, then the release would be against public policy. Does that fit together? Because of the workers' compensation. I think you've got two different arenas. And we've got the statements in white that says, in the employment situation, you cannot use a release. I think that recognizes that there are certain situations where, as some of the courts have called, a necessity may exist, where we can't allow a party to exalt itself of negligence, liability, in exchange for the person to be allowed to do whatever it is they're doing. As the trend in society goes toward training before employment, is this the next progression? I mean, you used to hire police officers and send them to police training institutes. Now they go first very often at their own expense, get hired, and then maybe there's some reimbursement. But they're much more likely to be hired if they're already trained. You take vocational courses in school rather than learning on the job. I think, if I may answer that, if you don't mind. Yes, you may answer. I think in certain circumstances where you had a legal requirement imposed and say you must have a degree or training before you do something, we might have a different fact pattern. I'm not talking about there being a legal requirement. I'm talking about there being the reality of the workforce. But I think in this situation, we don't have it on this case. Maybe this isn't the case to do that. Maybe there's another case out there with those facts that say yes. But this isn't that one. Thank you. Appreciate it. Thank you. Take the matter under advice.